(No. 31278.—

THE TOWN OF THORNTON *et al.*, Appellants, *vs.* WILLIAM H. WINTERHOFF *et al.*, Appellees.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

MacLeish, Spray, Price & Underwood, of Chicago, (Robert S. Cushman, and Joseph A. Dubbs, of counsel,) for appellants.

O. I. Lewis, and Burke, James & Burke, both of Chicago, (Edmund W. Burke, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

This is a suit brought by three taxpayers on behalf of the town of Thornton and the board of auditors of Thornton Township, Illinois, to recover on an official bond for a breach of duty upon the part of the supervisor of Thornton Township and as *ex-officio* treasurer of the road and bridge fund thereof, in that it is claimed he improperly paid two anticipation warrants in the aggregate amount of approximately $6756, drawn against the taxes of 1932, out of taxes other than for that year, and thereby a cause of action has accrued to the township and the people thereof. The cause was referred to a master who reported the testimony and recommended a decree in favor of the plaintiffs. The court sustained exceptions to the master's report and recommendations, and entered a decree dismissing the cause for want of equity.

A motion is made to transfer this cause to the Appellate Court on the ground that the question involved does not authorize a direct appeal to this court. Analyzed in a simple manner, the plaintiffs' claim is that tax money to the extent of $6756 was improperly paid out, and that a taxpayer has the right to maintain a suit in equity on behalf of himself and other taxpayers against a public officer and his sureties who have improperly expended taxes collected by him. It is not claimed that an individual should recover this money, and if recovery is had it is revenue which belongs to the township and the road and bridge fund of the township.

Under a number of decisions we have held that revenue is involved when some recognized authority of the State, or of some municipality authorized by law, attempts to proceed under the law to collect tax money, and that it is also involved where suit is brought against a city treasurer to collect funds illegally withheld as commissions. It seems to us that the test considered in the cases is whether or not the recovery would belong to the public, or would belong to an individual. In the present case, if recovery of the money claimed to have been illegally expended is had, it will go into the treasury of the town of Thornton. Under similar conditions we have held that direct appeal lies to this court. (*People ex rel. Schreiner* v. *Courtney,* 380 Ill. 171; *People* v. *Holten,* 259 Ill. 219; *Jones* v. *O'Connell,* 266 Ill. 443.) We are satisfied that the appeal properly comes to this court.

The action is in the form of a complaint in chancery, in which three taxpayers, for and on behalf of the township, bring suit against the supervisor and highway commissioner of Thornton Township, and the surety on the bond of the supervisor and *ex-officio* treasurer, given for the faithful performance of all of his duties as *ex-officio* treasurer of the road and bridge fund of the town of Thornton. Briefly, the contention made by appellants is

that two anticipation warrants were drawn against the tax levied for the year 1932, one including interest in the sum of $2200, and the other including interest in the sum of $4556.50. These warrants were not paid until some years later, the larger item being paid on July 28, 1944, and the other on May 11, 1945. These payments were made upon the order of the board of town auditors.

The complaint charges that when the warrants were paid there were no funds derived from the 1932 road and bridge tax in the hands of the treasurer, or, at the most, something over $200. Plaintiffs arrive at this conclusion by showing that in May, 1942, there was no money whatsoever in the hands of the treasurer derived from the 1932 road and bridge tax, and that until May, 1945, only $217.85 had been collected, so that it was impossible to pay the two warrants out of the actual funds then standing to the credit of the 1932 road and bridge fund in the hands of the treasurer; that since the money was paid for warrants issued against the 1932 road and bridge funds, when there was insufficient money in the hands of the treasurer from that fund, a breach has occurred in the bond given for the faithful performance of the treasurer's duty, which gives rise to a cause of action for the benefit of the town for the entire amount of these warrants so paid.

The defendants, however, established beyond any question that the total collections from the 1932 road and bridge tax, after paying commissions and warrants given in payment of taxes, amounted to the sum of $16,700.66, and that the total amount of warrants drawn against the 1932 road and bridge fund, including the two warrants in controversy, aggregated $15,966.97, showing a surplus over and above the amount of the warrants drawn against the fund and paid by the treasurer.

The position of appellants, without directly so stating, seems to be that if the township treasurer pays an anticipation warrant from money in his hands, it must be paid

from the identical funds derived from taxes levied for the purpose of paying those particular anticipation warrants; or, in other words, if the particular fund in question has been temporarily diverted, and the township has other money on hand to pay such warrants, derived from other sources than the particular tax levy against which it is drawn, it is a breach of the bond entitling the town to recover the full amount of such warrants without regard to whether there has been an actual loss, or otherwise.

It is to be noted this suit is brought in equity, the reason for which does not appear, and that no damage or loss to the township or any other person is claimed or alleged in the complaint. It appears from the record that the financial affairs of Thornton Township were somewhat confused, and that in 1928 and 1929 it had great difficulty in carrying on its essential corporation functions from the revenue collected from the taxpayers. An auditor, who examined the books, gives what seems to be the plausible explanation of what probably occurred in the disbursing of the revenue of the town, *viz.*, that the reports of the supervisor, and an examination of the books, disclosed that the township officers commingled the money raised for all tax purposes, without regard as to whether it was for town purposes or road and bridge purposes, and it was paid out without regard to any particular fund to which it was supposed to be allocated, and which was raised for a specific purpose, and that funds derived from taxes for a particular purpose were diverted to pay other town purposes. This appears to have been quite likely, and we have no doubt but what the exceedingly poor collections during that time and the previous years produced a very difficult situation for the town officers in the performance of its corporate functions.

We think the evidence shows that what actually happened was that the road and bridge collections for the tax year of 1932 were probably commingled with other township funds, and paid upon its pressing accounts, and the

warrants in controversy were not paid at the time the collections for the road and bridge taxes were made. We do not think that this necessarily creates a breach of a bond which would entitle the People to recover the full amount of the warrants paid, unless an actual loss occurred.

It is now settled that the practice of temporarily borrowing by one fund from another fund of a municipal corporation to carry on the essential governmental functions of the corporation is not in itself illegal or prohibited, so long as the borrowed funds are returned to the fund from which they have been borrowed and are available when demand is made for the payment by persons entitled to be paid from such fund. In *Gates* v. *Sweitzer*, 347 Ill. 353, we said: "Municipal officers have no right to divert moneys from one fund to another and different fund for which it was not appropriated. But the word 'divert' is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use. If, as counsel for appellees argue, the commissioners had a right to, and did, temporarily borrow sufficient idle bond funds or other funds for the benefit of a fund having a stated and sufficient income to repay the sum borrowed, as the bond fund had, and with the intention that it shall be so repaid, such is not a diversion of funds, for the fund from which the money is taken holds the credit against bond interest and principal fund and is not depleted." We followed this case and approved the principle in *People ex rel. Toman* v. *Central Plaza Hotel Corp.* 375 Ill. 114.

The books of the township treasurer disclose that from 1935 there was a surplus in collections of tax money which, if the general funds were commingled, would indicate that the 1932 road and bridge tax collections were included in that amount. As a matter of fact, the board of town auditors must have considered the 1932 road and bridge fund was then available, because in the early part of 1944 they ordered the town treasurer to pay the two warrants in con-

troversy to stop the payment of interest. The board was bound to know the warrants could not be paid from any fund except the money collected from the 1932 road and bridge tax, and the fact the township officials did not properly carry their accounts separately did not prevent the auditors from ordering the payment to be made.

A number of points have been argued in this case which we think are wholly outside the point in issue. We have before us a technical breach of the law in that a township treasurer pays an anticipation warrant against a particular fund, when at the time he makes the payment there appears to have been no money in such fund. The warrants seem to have been paid from general funds, with which the particular fund has become commingled, and the original road and bridge fund, even though it might be irregularly or temporarily diverted, has been repaid from other sources, which makes it available for the payment of the particular warrants drawn against it. This is not a practice to be approved, but we do not think this constitutes a breach of the bond for which the treasurer and his bondsmen may be penalized, when no loss has been shown to have occurred.

The complaint is very artfully drawn so as to disclose merely a breach of what appears to be a duty of the town treasurer, but there is no allegation in the complaint that any loss has occurred, or any damage done to anyone by the treasurer's action. It is a fundamental principle applicable alike to breaches of contract and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act. (*Williams* v. *Chicago and Alton Railroad Co.* 135 Ill. 491; Am. & Eng. Ency. vol. 8, p. 548.) We do not see any equitable ground of action, or other action, against the treasurer, since no demand was made against him for pay-

120

ment at a time when he did not have money available for that purpose.

We are of the opinion that the decree of the circuit court of Cook County is correct, and accordingly the same is hereby affirmed.

*Decree affirmed.*